**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| WESCO INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No.: 18-cv-322 |
| ALLIED FIRST BANCORP, INC.; ALLIED | ) | |
| FIRST BANK, SB; KENNETH L. BERTRAND; | ) | |
| JAMES MALONEY; SANJAY GULATI; | ) | |
| SUSHANT GULATI; and SACHIN GULATI, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Wesco Insurance Company ("Wesco") for its Complaint for Declaratory Judgment against Allied First Bancorp, Inc. ("Allied Holdings"), Allied First Bank, sb ("Allied Bank"), Kenneth L. Bertrand ("Bertrand"), James Maloney ("Maloney"), Sanjay Gulati, Sushant Gulati and Sachin Gulati:

## NATURE OF THE ACTION

1.     Wesco seeks a declaration of its obligations under a Commercial Policy it issued to Allied Holdings under policy number WDO1439606 01 (the "Policy") with respect to a lawsuit filed by Sanjay Gulati, Sushant Gulati and Sachin Gulati (the "Underlying Plaintiffs") in the United States District Court for the Northern District of Illinois, Case No. 17 CV 7233, originally styled as *Sanjay Gulati, Sushant Gulati, and Sachin Gulati v. Allied First Bancorp, Inc., Kenneth L. Bertrand, and James Maloney* and later amended to *Sanjay Gulati, Sushant Gulati, and Sachin Gulati v. Allied First Bank, sb, Kenneth L. Bertrand, and James Maloney* (the "Underlying Lawsuit").

## THE PARTIES

2.      Wesco is a Delaware corporation with its principal place of business in New York. Wesco is engaged in the business of underwriting and selling insurance and is authorized to transact business in Illinois.

3.      Allied Holdings is a corporation organized under the laws of the State of Maryland with its principal place of business at 3201 Orchard Road in Oswego, Illinois.

4.      Allied Bank is a subsidiary of Allied Holdings and an Illinois-chartered savings bank with its principal place of business at 3201 Orchard Road in Oswego, Illinois.

5.      Bertrand is the President and Chief Executive Officer of Allied Bank and a citizen of the State of Illinois.

6.      Maloney is the Chief Financial Officer of Allied Bank and a citizen of the State of Illinois.

7.      Sanjay Gulati is a citizen of the State of Georgia.

8.      Sushant Gulati is a citizen of the State of Georgia.

9.      Sachin Gulati is a citizen of the State of Georgia.

10.     The Underlying Plaintiffs are named herein because they may have an interest in the subject matter of this action. Wesco seeks no relief from Underlying Plaintiffs other than to the bind them to the outcome of this insurance coverage dispute.

## STATEMENT OF JURISDICTION AND VENUE

11.     This action is brought pursuant to 28 U.S.C. § 2201 and 28 U.S.C. § 1332. Wesco is a citizen of Delaware and New York and the Defendants are citizens of Maryland, Illinois and Georgia.

12. An actual controversy exists between Wesco, on the one hand, and the Defendants, on the other hand, regarding the existence of insurance coverage in connection with the Underlying Lawsuit.

13. The amount in controversy exceeds the jurisdictional amount of $75,000, exclusive of costs, interest and attorneys' fees. The Underlying Lawsuit alleges and seeks damages in an amount in excess of $75,000.

14. Venue is appropriate in the United States District Court for the Northern District of Illinois, Eastern Division under 28 U.S.C. § 1391 because Allied Holdings and Allied Bank are located in this judicial district; Bertrand and Maloney work and reside in this judicial district; and the insurance policy which forms the basis of this dispute was delivered to Allied Holdings in this judicial district.

## THE UNDERLYING LAWSUIT

15. On or around October 6, 2017, the Underlying Plaintiffs filed a complaint entitled "Complaint" in the Underlying Lawsuit. The Complaint named as defendants Allied Holdings, Bertrand and Maloney. (A copy of the Complaint is attached as Exhibit A.)

16. On or around November 13, 2017, the Underlying Plaintiffs filed an amended complaint entitled "Amended Complaint" in the Underlying Lawsuit. The Amended Complaint named as defendants Allied Bank, Bertrand and Maloney. (A copy of the Amended Complaint is attached as Exhibit B.)

17. The Complaint and Amended Complaint in the Underlying Lawsuit allege that the Underlying Plaintiffs established a national mortgage division for Allied Holdings (Complaint) and Allied Bank (Amended Complaint) through mortgage production offices ("MPO" or "MPOs"). Ex. A at ¶ 20; Ex. B at ¶ 20.

18.     The Complaint and Amended Complaint allege that the Underlying Plaintiffs operated the mortgage production division and were responsible for all overhead associated with the MPO, including employee wages, salaries, employer taxes and benefits. Ex. A at ¶¶ 22-23; Ex. B at ¶¶ 22-23.

19.     The Complaint and Amended Complaint allege that to fund operations, the Underlying Plaintiffs established an operating account with Allied Holdings (Complaint) and Allied Bank (Amended Complaint) (the "Operating Account"), which the Underlying Plaintiffs initially funded. Ex. A at ¶ 24; Ex. B at ¶ 24.

20.     The Complaint and Amended Complaint allege that Allied Holdings (Complaint) and Allied Bank (Amended Complaint) received a fixed fee for every transaction the mortgage production division closed, which was paid from the Operating Account. The remainder from each transaction stayed in the Operating Account. Ex. A at ¶ 26; Ex. B at ¶ 26.

21.     The Amended Complaint alleges that the Underlying Plaintiffs' relationship with Allied Bank was an at-will relationship that was governed, in part, by the Allied Bank Team Manager Handbook. Ex. B at ¶ 27.

22.     Pursuant to the Allied Bank "Addendum to Team Manager Handbook," signed by Sanjay Gulati on June 1, 2015, the Underlying Plaintiffs had to maintain a minimum reserve amount in the Operating Account to cover specific financial obligations. Ex. A at ¶ 27, ex. A; Ex. B at ¶ 28, ex. A.

23.     The Complaint and Amended Complaint allege that in the spring of 2017, Bertrand complained to Sanjay Gulati about MPO employee conduct, which led to the Underlying Plaintiffs resigning and terminating their affiliation with Allied Holdings

(Complaint) and Allied Bank (Amended Complaint) in late June 2017. Ex. A at ¶¶ 31-33; Ex. B at ¶¶ 32-34.

24.    The Complaint and Amended Complaint allege that the Underlying Plaintiffs proposed a 90-day wind-down for all transactions in the pipeline and suggested that Allied Holdings (Complaint) and Allied Bank (Amended Complaint) hold back $150,000 in the Operating Account to cover all costs associated with pending transactions and reserve requirements outlined in the Addendum to Team Manager Handbook. Ex. A at ¶ 34; Ex. B at ¶ 35.

25.    The Complaint and Amended Complaint allege that Allied Holdings (Complaint) and Allied Bank (Amended Complaint) refused to return the Operating Account funds and subsequently cut off the Underlying Plaintiffs' access to the Operating Account completely. Ex. A at ¶ 37; Ex. B at ¶ 38.

26.    The Complaint and Amended Complaint allege that Allied Holdings (Complaint) and Allied Bank (Amended Complaint), including Maloney, disabled the Underlying Plaintiffs' ability to view activity in the Operating Account. Ex. A at ¶¶ 39-43; Ex. B at ¶¶ 40-44.

27.    The Amended Complaint alleges that because Allied Bank cut off their access to the Operating Account, the Underlying Plaintiffs do not know exactly how much money remains in it, but that the amount is approximately $1,200,000. Ex. B at ¶¶ 45-47, 55.

28.    The Complaint alleges that the Operating Account holds approximately $1,200,000. Ex. A at ¶ 1, 3, 51.

29.    The Complaint and Amended Complaint allege that after the Underlying Plaintiffs demanded return of the Operating Account funds on July 20, 2017, Allied Holdings (Complaint) and Allied Bank (Amended Complaint) responded that the Underlying Plaintiffs were only

entitled to funds consisting of their salaries, hourly wages and discretionary bonuses. Ex. A at ¶¶ 44-45; Ex. B at ¶¶ 48-49.

30.     The Complaint and Amended Complaint allege that Bertrand has attempted to recruit members of the Underlying Plaintiffs' MPO team to work for Allied Holdings (Complaint) and Allied Bank (Amended Complaint) and Bertrand; has violated banking regulations by providing detailed information about the Operating Account to those members; and seeks to use the Underlying Plaintiffs' private, confidential and proprietary information to unfairly compete with the Underlying Plaintiffs. Ex. A at ¶¶ 48-50; Ex. B at ¶¶ 52-54.

31.     The Complaint and Amended Complaint allege that Bertrand knew that withholding $1,200,000 in the Operating Account will significantly hamper the Underlying Plaintiffs' ability to forge new relationships with other banks and their ability to grow their business. Ex. A at ¶ 51; Ex. B at ¶ 55.

32.     Count I of the Complaint is entitled "Conversion – All Defendants" and alleges that the Underlying Plaintiffs deposited money into the Operating Account and controlled it prior to their resignations. Count I alleges that Allied Holdings never contributed any funds to the Operating Account and has wrongfully assumed control over it. Count I alleges that Allied Holdings, Bertrand and Maloney's conduct is willful and wanton and that they have acted knowingly in refusing to return to the Underlying Plaintiffs the funds in the Operating Account. Count I seeks punitive damages for Allied Holdings, Bertrand and Maloney's allegedly willful and malicious conduct, costs and attorneys' fees. Ex. A at ¶¶ 52-58;

33.     Claim No. 1 of the Amended Complaint is entitled "Conversion – Allied" and alleges that the Underlying Plaintiffs deposited money into the Operating Account and controlled it prior to their resignations. Count I alleges that Allied Bank never contributed any funds to the

Operating Account, that the withheld funds do not represent a debt or obligation owed by the Underlying Plaintiffs and that Allied Bank has wrongfully assumed control over the Operating Account. Claim No. 1 alleges that Allied Bank's conduct is willful and wanton and that Allied Bank, through Bertrand and Maloney, knowingly refused to return to the Underlying Plaintiffs the funds in the Operating Account. Claim No. 1 seeks punitive damages for Allied Bank's allegedly willful and malicious conduct, costs and attorneys' fees. Ex. B at ¶¶ 56-63.

34. Count II of the Complaint is entitled "Breach of Contract – Allied" and alleges Allied Holdings breached the Addendum to Team Manager Handbook by failing to return to the Underlying Plaintiffs all funds above the reserve amount following their termination from Allied Holdings. Count II seeks punitive damages for Allied Bank's willful and malicious conduct, costs and attorneys' fees. Ex. A at ¶¶ 59-64.

35. Claim No. 2 of the Amended Complaint is entitled "Breach of Contract – Allied" and alleges Allied Bank breached the Addendum to Team Manager Handbook by failing to return to the Underlying Plaintiffs all funds above the reserve amount following their separation from Allied Bank. Claim No. 2 seek punitive damages for Allied Holdings' willful and malicious conduct, costs and attorneys' fees. Ex. B ¶¶ 64-69.

36. Count III of the Complaint is entitled "Breach of Fiduciary Duty – all Defendants" and alleges that Allied Holdings, Bertrand and Maloney controlled the funds in the Operating Account and owed Plaintiffs a fiduciary duty to protect and return Underlying Plaintiffs' property upon request for its return. Allied Holdings, Bertrand and Maloney have breached this fiduciary duty by knowingly refusing to return the property. Count III seeks a judgment in favor of Underlying Plaintiffs that Allied Holdings, Bertrand and Maloney breached their fiduciary duty and disgorgement against Allied Holdings, Bertrand and Maloney for the

fees collected from Underlying Plaintiffs' services during the period of the breach. Count III also seeks punitive damages for Allied Holdings, Bertrand and Maloney's willful and malicious conduct, costs and attorneys' fees. Ex. A at ¶¶ 65-69.

37.     Claim No. 3 of the Amended Complaint is entitled "Breach of Fiduciary Duty – All Defendants" and alleges that Allied Bank, Bertrand and Maloney had a fiduciary relationship with the Underlying Plaintiffs because the Underlying Plaintiffs entrusted their money to them by depositing it in the Operating Account and because Underlying Plaintiffs were promised that their money would be returned to them after the relationship ended. Claim No. 3 alleges that Allied Bank, Bertrand and Maloney exclusively control Underlying Plaintiffs' money and that Allied Bank, Bertrand and Maloney have knowingly refused to return the money, which constitutes a breach of fiduciary duty. Claim No. 3 seeks a judgment in favor of Underlying Plaintiffs that Allied Bank, Bertrand and Maloney breached their fiduciary duty and disgorgement against Allied Bank, Bertrand and Maloney for the fees collected from Underlying Plaintiffs' services during the period of the breach. Claim No. 3 also seeks punitive damages for Allied Bank, Bertrand and Maloney's willful and malicious conduct, costs and attorneys' fees. Ex. B ¶¶ 70-77.

38.     Count IV of the Complaint is entitled "Consumer Fraud and Deceptive Business Practices Act – all Defendants" and alleges that Allied Holdings, Bertrand and Maloney's acts of inviting Underlying Plaintiffs to deposit money in the Operating Account, failing to tell Underlying Plaintiffs that penalties or fees might apply and then refusing to return the funds in the Operating Account violated the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.* ("ICFA"). Count IV seeks punitive damages for Allied Holdings,

Bertrand and Maloney's allegedly willful and malicious conduct, costs and attorneys' fees, as provided for under the ICFA. Ex. A. at ¶¶ 70-75.

39.     Claim No. 4 of the Amended Complaint is entitled "ICFA – All Defendants" and alleges that Allied Bank, Bertrand and Maloney's acts of inviting Underlying Plaintiffs to deposit money in the Operating Account, failing to tell Underlying Plaintiffs that penalties or fees might apply and then refusing to return the funds in the Operating Account violated the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.* ("ICFA"). Claim No. 4 seek punitive damages for Allied Bank, Bertrand and Maloney's allegedly willful and malicious conduct, costs and attorneys' fees, as provided for under the ICFA. Ex. B at ¶¶ 78-83.

40.     Count V of the Complaint is entitled "Common Law Fraud – all Defendants" and alleges that Allied Holdings, Bertrand and Maloney misled Underlying Plaintiffs to believe that the Operating Account would be treated as any other bank account. Count V alleges further that Allied Holdings, Bertrand and Maloney did not disclose to Underlying Plaintiffs that the money in the Operating Account would become Allied Holdings' and, further, that Allied Holdings, Bertrand and Maloney never intended to return the funds to the Underlying Plaintiffs. Count V seeks punitive damages for Allied Holdings, Bertrand and Maloney's willful and malicious conduct, costs and attorneys' fees. Ex. A at ¶¶ 76-81.

41.     Claim No. 5 of the Amended Complaint is entitled "Common Law Fraud – Allied" and alleges that Allied Bank misled Underlying Plaintiffs to believe that the Operating Account would be treated as any other bank account and intentionally and materially omitted telling Underlying Plaintiffs that the money in the Operating Account would become Allied Bank's and, further, that Allied Bank never intended to return the funds to Plaintiffs. Claim No. 5

seeks punitive damages for Allied Bank's allegedly willful and malicious conduct, costs and attorneys' fees. Ex. B at ¶¶ 84-89.

42. Count V [*sic*] of the Complaint is entitled "Unjust Enrichment – Allied" and alleges that Allied Holdings has unjustly retained the funds of the Operating Account and that permitting Allied Holdings to retain all of the funds would constitute a windfall because the Underlying Plaintiffs already paid Allied Holdings. Count V seeks punitive damages for Allied Holdings' allegedly willful and malicious conduct, costs and attorneys' fees. Ex. A at ¶¶ 82-86.

43. Claim No. 6 of the Amended Complaint is entitled "Unjust Enrichment – Allied" and alleges that Allied Bank has unjustly retained the funds of the Operating Account and that permitting Allied Bank to retain all of the funds would constitute a windfall because the Underlying Plaintiffs already paid Allied Bank. Claim No. 6 seeks punitive damages for Allied Bank's allegedly willful and malicious conduct, costs and attorneys' fees. Ex. B at ¶¶ 90-95.

44. Count VI in the Complaint is entitled "Accounting – in the alternative – Allied" and alleges that Underlying Plaintiffs have established the need for an accounting of the Operating Account since Underlying Plaintiffs have not been able to see its deposits or credits and because Allied Holdings has not provided consistent reporting about the Operating Account. Count VI seeks costs and attorneys' fees. Ex. A at ¶¶ 87-91.

45. Claim No. 7 of the Amended Complaint is entitled "Accounting – Allied" and alleges that Underlying Plaintiffs have established the need for an accounting of the Operating Account since Underlying Plaintiffs have not been able to see its deposits or credits and because Allied Bank has not provided consistent reporting about the Operating Account. Claim No. 7 seeks costs and attorneys' fees. Ex. B at ¶¶ 96-100.

46. On October 16, 2017, Allied Holdings tendered the Complaint to Wesco.

47.     Wesco has issued a denial of coverage under the Policy for the Underlying Lawsuit.

## THE WESCO POLICY

48.     Wesco issued a Commercial Policy to Allied Holdings for the period February 13, 2017 to February 13, 2018, policy number WDO1439606 01 (the "Policy"). (A copy of the Policy is attached as Exhibit C.)

49.     The Policy contains the following General Terms and Conditions Applicable to All Coverage Parts:

> **Company** means the **Parent Company** and any **Subsidiary**.
>
> \*       \*       \*
>
> **Parent Company** means the entity named in Item 1.(a) of the Declarations Page.
>
> \*       \*       \*
>
> **Subsidiary** means:
>
> 1.      any entity in which the **Company** owns, directly or through one or more subsidiaries, more than fifty percent (50%) of the outstanding securities representing the present right to vote for, elect, appoint or exercise a majority control over such entity's board of directors, board of trustees, board of managers, natural person partners or functional equivalent;
>
> 2.      any limited liability company in which the **Company,** or one or more of its subsidiaries, has the right to appoint or designate fifty percent (50%) or more of such limited liability company's managers; [ ]
>
> \*       \*       \*
>
> provided that such entities, limited liability companies or joint ventures are named in the **Application** for coverage.

50.     Allied Bank is listed on the Policy's Schedule of Subsidiaries.

51.     The Policy's Directors & Officers ("D&O") Coverage Part contains the following Insuring Agreement, as amended by endorsement:

> **PRIVACY LIABILITY COVERAGE** – The **Insurer** will pay on behalf of the **Insured**, **Loss** resulting from any **Claim** first made during the **Policy Period** or Extended Reporting Period (if exercised) against the **Insured** for any **Wrongful Privacy Act**.

52.     The Policy's D&O Coverage Part contains the following Definitions, as amended by endorsement:

**Confidential Customer Information** means information about a customer obtained by the **Company** including name, address, telephone number, date of birth, social security number, driver's license number or other personal identification number, financial account number (including a bank account number, retirement account number, or healthcare spending account number), credit, debit or other payment card number, any individually identifiable health information pursuant to the Health Insurance Portability and Accountability Act of 1996 ("HIPPA"), or information concerning the individual that constitutes "non-public personal information" as defined in the Gramm-Leach Bliley Act of 1999, as amended, held by the **Company**.

**Confidential Customer Information Breach** means any federal, state or local statutory or common law that requires notice to persons whose **Personal Information** was accessed or may reasonably have been accessed by an unauthorized person.

**Employee** means any natural person whose labor or service was, is or shall be engaged and directed by the Company including full-time, part-time, seasonal, leased and temporary employees as well as volunteers. Employee shall not include any **Independent Contractor**.

**Executive** means any natural person who was, is or shall be a duly elected or appointed:

1.     director, officer, or member of the board of managers or management committee of the **Company**;

2.     in-house general counsel or risk manager of the **Company**; or

*       *       *

**Insured** means the **Insured Persons** and the **Company**.

**Insured Person** means any:

1.     **Executive**; or

2.     **Employee**.

*       *       *

**Loss** means **Defense Expenses** and any amount the **Insured** is legally obligated to pay resulting from a **Claim,** including damages, judgments, settlements, punitive or exemplary damages or the multiple portion of any multiplied damage award (if insurable under the applicable law most favorable to the insurability of punitive, exemplary, or multiplied damages), and legal fees and expenses awarded pursuant to a court order or judgment. **Loss** shall not include:

*       *       *

2.     criminal or civil fines or penalties imposed by law;

*       *       *

5.     any restitution, disgorgement, or payment of similar payments including but not limited to the return of fees, commissions or charges for the **Company's** services;

6.      costs to comply with any non-monetary or injunctive relief of any kind or any agreement to provide such relief . . . ;

*      *      *

Where the **Company** reasonably determines that punitive, exemplary or multiple damages are insurable under the applicable law, the **Insurer** shall not challenge that interpretation of insurability.

*      *      *

**Privacy Policy** means the internal or publicly accessible written documents that set forth the **Company's** policies, standards and procedures for collection, use, disclosure, sharing, dissemination and correction or supplementation of, and access to, **Confidential Customer Information**.

**Wrongful Act** as used in this **Coverage Part** means any actual or alleged:

1.      error, omission, misstatement, misleading statement, neglect or breach of duty by **Insured Persons** in their capacity as such or, with respect to Insuring Agreement C., by the **Company**; or

2.      matter claimed against the **Insured Persons** solely by reason of their serving in such capacity.

      **Wrongful Act** shall also mean a **Wrongful Privacy Act**.

**Wrongful Privacy Act** means:

1.      theft of **Confidential Customer Information** that is in the care, custody or control of the **Company**, or an independent contractor that is holding or processing such information on behalf of the **Company**;

2.      the failure of the **Company** to timely disclose an incident or event triggering a violation of an **Confidential Customer Information Breach**;

3.      failure by the **Insureds** to comply with that part of the **Privacy Policy** that specifically:

   (a)      prohibits or restricts the disclosure, sharing or selling of **Confidential Customer Information**;

   (b)      requires the **Company** to provide access to **Confidential Customer Information** or to correct incomplete or inaccurate **Confidential Customer Information** after a request is made by a customer of the **Company**; or

   (c)      mandates procedures and requirements to prevent the loss of **Confidential Customer Information**.

53.      The Policy's D&O Coverage Part contains the following Exclusions, as amended by endorsement:

      **Contractual Liability** - The **Insurer** shall not be liable to pay any **Loss** in connection with any **Claim** made against any **Insured**:

*      *      *

13

2.      for the intentional breach, in fact, of any express written or oral contract or amounts the **Company** is obligated to pay pursuant to any express written or oral contract. If it is established in fact that such **Claim** involves intentional breach of contract, the **Insured** agrees to reimburse **Defense Expenses**.

\*      \*      \*

**Employment-Related Wrongful Acts** - The **Insurer** shall not be liable to pay any **Loss** in connection with any **Claim** made against any **Insured** arising from, based upon, or attributable to any employment-related **Wrongful Act**.

\*      \*      \*

**Fraud/Illegal Profit and Violation of Law** - The **Insurer** shall not be liable to pay any **Loss** in connection with any **Claim** made against any **Insured** arising from, based upon, or attributable to:

1.      the gaining of any profit, remuneration or pecuniary advantage to which such Insured is not legally entitled; or

2.      any fraudulent or criminal Wrongful Act with actual knowledge of its wrongful nature or with intent to cause damage by such Insured,

as evidenced by a final adjudication by a judge, jury or arbitrator in any proceeding.

**Insured vs. Insured** - The **Insurer** shall not be liable to pay any **Loss** in connection with any **Claim** made against any **Insured** by, on behalf of, or at the behest of any **Insured** in any capacity . . . .

54.     The Policy's Employment Practices Liability ("EPL") Coverage Part contains the following Insuring Agreement:

A.      **EMPLOYMENT PRACTICES LIABILITY** - The **Insurer** will pay on behalf of the Insured, **Loss** resulting from any **Employment Claim** first made during the **Policy Period** or Extended Reporting Period (if exercised), against the **Insured** for a **Wrongful Employment Act**.

55.     The Policy's EPL Coverage Part contains the following Definitions, as amended by endorsement:

**Employee** means any natural person whose labor or service was, is or shall be engaged and directed by the **Company** including full-time, part-time, seasonal, leased and temporary employees as well as volunteers. Employee shall not include any **Independent Contractor**.

**Employment Agreement** means any express or implied employment agreement regardless of the basis in which such agreement is alleged to exist, other than a collective bargaining agreement.

\*      \*      \*

**Loss** means **Defense Expenses** and any amount the **Insured** is legally obligated to pay resulting from a **Claim**, including damages, judgments, settlements, back pay, front pay, damages for mental anguish and emotional distress, compensatory damages, statutory attorneys' fees, and liquidated damages awarded pursuant to the Age Discrimination in

Employment Act or the Equal Pay Act, punitive or exemplary damages or the multiple portion of any multiplied damage award (if insurable under the applicable law most favorable to the insurability of punitive, exemplary, or multiplied damages), and legal fees and expenses awarded pursuant to a court order or judgment. **Loss** shall not include:

\*     \*     \*

2. other than **Defense Expenses**, costs to comply with any non-monetary or injunctive relief of any kind or any agreement to provide such relief, including but not limited to any damages, costs or expenses incurred in making an accommodation for any disabled person pursuant to the Americans with Disabilities Act or any similar federal, state or local laws, or in complying with any other federal, state or local laws of any kind;

\*     \*     \*

6. other than **Defense Expenses**, compensation earned by an **Employee** while employed by the **Company** but not paid by the **Company** for reasons other than **Wrongful Acts**, or damage determined to be owed under an express written contract of employment or an express written obligation to make payments in the event of termination of employment; or

7. any matters which are uninsurable under the law pursuant to which this **Policy** shall be construed.

Where the **Company** reasonably determines that punitive, exemplary or multiple damages are insurable under the applicable law, the **Insurer** shall not challenge that interpretation of insurability.

\*     \*     \*

<u>**Wrongful Act**</u> means any actual or alleged:

1. **Wrongful Employment Act** occurring in the course of or arising out of a **Claimant's** employment, application for employment or performance of services with the **Company**; or

2. **Wrongful Third Party Act**, if coverage is set forth it Item 4. of the Declarations Page.

<u>**Wrongful Employment Act**</u> means any actual or alleged:

\*     \*     \*

2. breach of **Employment Agreement**;

\*     \*     \*

7. failure or refusal to create or enforce adequate workplace or employment policies and procedures, employ or promote, including wrongful failure to grant bonuses or perquisites, or grant tenure;

\*     \*     \*

56. The Policy's EPL Coverage Part contains the following Exclusion:

**Severance Pay/Damages** - The **Insurer** shall not be liable to pay any **Loss**, other than **Defense Expenses**, in connection with any **Claim** made against any **Insured** for severance pay, damages or penalties under an express written Employment Agreement, or under any policy or procedure providing for payment in the event of separation from employment; or sums sought solely on the basis of a claim for unpaid services.

57. The Policy's Fiduciary Coverage Part contains the following Insuring Agreement:

A. **FIDUCIARY LIABILITY** - The **Insurer** will pay on behalf of the **Insured**, **Loss** resulting from any **Claim** first made during the **Policy Period** or the Extended Reporting Period (if exercised) against the **Insured** for a **Wrongful Act**.

58. The Policy's Fiduciary Coverage Part contains the following Definitions, as amended by endorsement:

**Employee Benefits** means

1. any **Employee Benefit Plan**; or

\*      \*      \*

**Employee Benefit Plan** means:

1. any **Welfare Plan** which was, is now, or becomes sponsored solely by the Company exclusively for the benefit of **Employees** of the **Company**;

\*      \*      \*

**Welfare Plan** means any plan so defined in Section 3(1) of **ERISA** or any similar or related federal, state, or local law or regulation.

**Wrongful Act** means any actual or alleged:

1. breach of fiduciary duty by or on behalf of the **Insured** with respect to any **Employee Benefit Plan** . . .,

\*      \*      \*

59. The Policy's Fiduciary Coverage Part contains the following Exclusions:

**Fraud/Illegal Profit and Violation of Law** - The **Insurer** shall not be liable to pay any **Loss**, **Voluntary Settlement Fees**, or **HIPAA** civil money penalties, in connection with any **Claim** made against any **Insured** arising from, based upon, or attributable to:

1. the gaining of any profit, remuneration or pecuniary advantage to which such **Insured** is not legally entitled; or

2. any fraudulent or criminal **Wrongful Act** with actual knowledge of its wrongful nature or with intent to cause damage by such **Insured**,

as evidenced by a final adjudication by a judge, jury or arbitrator in any proceeding.

\*      \*      \*

**Failure to Collect Contribution/Benefits** - The **Insurer** shall not be liable to pay any **Loss**, other than **Defense Expenses**, in connection with any **Claim** made against any

16

**Insured** for:

\* \* \*

2. the return or reversion to an **Employee** of any contribution or asset of any Employee Benefits; or

\* \* \*

60. The Policy's Network Security and Privacy Liability Coverage Part contains the following Insuring Agreements, as amended by endorsement:

A. <u>**NETWORK SECURITY AND PRIVACY LIABILITY COVERAGE**</u> - The **Insurer** will pay on behalf of the **Insured**, **Loss** resulting from any **Claim** first made during the **Policy Period** or Extended Reporting Period (if exercised) against the **Insured** for any **Wrongful Network Security Act** or **Wrongful Privacy Act**.

61. The Policy's Network Security and Privacy Liability Coverage Part contains the following Definitions, as amended by endorsement:

<u>**Personally Identifiable Information**</u> means an individual's name in combination with one or more of the following:

1. information concerning the individual that constitutes "non-public personal information" as defined in the Gramm-Leach Bliley Act of 1999, as amended, and regulations issued pursuant to the Act;

\* \* \*

4. other non-public **Personally Identifiable Information**, as protected under any local, state, federal or foreign statute or regulation.

\* \* \*

<u>**Privacy Policy**</u> means the internal or publicly accessible written documents that set forth the **Company's** policies, standards and procedures for collection, use, disclosure, sharing, dissemination and correction or supplementation of, and access to, **Personally Identifiable Information**.

\* \* \*

<u>**Wrongful Privacy Act**</u> means:

1. theft of **Personally Identifiable Information** that is in the care, custody or control of the **Company** . . . .;

\* \* \*

3. failure by the **Insureds** to comply with that part of the **Privacy Policy** that specifically:

(a) prohibits or restricts the disclosure, sharing or selling of **Personally Identifiable Information**[.]

62.     The Policy's Network Security and Privacy Liability Coverage Part contains the following Exclusions, as amended by endorsement:

> **Fraud/Illegal Profit and Violation of Law** - The Insurer shall not be liable to pay any **Loss**, **Crisis Mitigation Expenses**, **Extortion Damages**, or **Reduction in Business Income**, in connection with any **Claim** made against any **Insured** arising from, based upon, or attributable to:
>
> > 1.      the gaining of any profit, remuneration or pecuniary advantage to which such **Insured** is not legally entitled; or
> >
> > 2.      any fraudulent or criminal **Wrongful Act** with actual knowledge of its wrongful nature or with intent to cause damage by such **Insured**, other than an **Employee** of the **Company** who acts outside the scope of his or her employment to intentionally commit a **Wrongful Network Security Act**,
>
> as evidenced by a final adjudication by a judge, jury or arbitrator in any proceeding.
>
> > \*       \*       \*
>
> **Insured vs. Insured** - The **Insurer** shall not be liable to pay any **Loss**, **Crisis Mitigation Expenses**, **Extortion Damages**, or **Reduction in Business Income**, in connection with any **Claim** made against any **Insured** by, on behalf of, or at the behest of any other **Insured** in any capacity; provided, however, that this exclusion shall not apply to any **Claim** brought by or maintained by a customer of the Company resulting from a **Wrongful Network Security Act**.

63.     The Policy's Illinois Amendatory Endorsement contains the following terms:

> > \*       \*       \*
>
> II.     The definition of **Loss**, in the DEFINITIONS Section of each Coverage Part shown below is amended as follows:
>
> > Network Security and Privacy Liability Coverage Part
> > Directors & Officers Liability Coverage Part
> > Employment Practices Liability Coverage Part
> > Fiduciary Liability Coverage Part
> > Professional Liability Coverage Part
>
> > > 1.      The definition of **Loss** shall not include prejudgment and/or post judgment interest.
> > >
> > > 2.      The definition of **Loss** is amended to add the following:
> >
> > For risks located in the State of Illinois, notwithstanding any other provision, the definition of **Loss** shall not include punitive or exemplary damages or the multiple portion of any multiplied damage award, except that if a suit shall have been brought against the **Insured** with respect to a **Claim** for acts or alleged acts falling within the coverage hereof, seeking both compensatory and punitive or exemplary damages, then **Insurer** will afford a defense to such action without liability, however, for such punitive or exemplary damages.

**Count I – Declaratory Judgment**
**(No Duty to Defend or Indemnify Allied Holdings, Allied Bank,**
**Bertrand and Maloney under the D&O Coverage Part)**

64.     Wesco re-alleges and incorporates each of the allegations of paragraphs 1 through 63 as if fully set forth herein.

65.     To the extent the Complaint and Amended Complaint do not allege a Wrongful Privacy Act, or otherwise fails to satisfy the terms of the D&O Coverage Part's Privacy Liability Coverage, no coverage applies.

66.     To the extent the Complaint and the Amended Complaint do not seek Loss as defined, no coverage applies.

67.     The Complaint and Amended Complaint allege that Bertrand and Maloney were Executives of Allied Holdings (Complaint) and Allied Bank (Amended Complaint).

68.     The Amended Complaint alleges that Underlying Plaintiffs were Employees of Allied Bank.

69.     To the extent the Complaint and Amended Complaint allege Loss in connection with any Claim made against any Insured by any Insured, the D&O Coverage Part excludes coverage based on the Insured vs. Insured exclusion.

70.     The Complaint and Amended Complaint allege that Allied Holdings (Complaint), Allied Bank (Amended Complaint), Bertrand and Maloney breached the Addendum to Team Manager Handbook.

71.     To the extent the Complaint and Amended Complaint allege Loss in connection with an intentional breach of contract, the D&O Coverage Part excludes coverage based on the Contractual Liability exclusion.

72.     To the extent the Complaint and Amended Complaint allege Loss in connection with any Claim made against any Insured arising from, based upon, or attributable to any

employment-related Wrongful Act, the D&O Coverage Part excludes coverage based on the Employment-Related Wrongful Acts exclusion.

73.     The Complaint and Amended Complaint allege that Allied Holdings (Complaint), Allied Bank (Amended Complaint), Bertrand and Maloney are not legally entitled to withhold the funds in the Operating Account.

74.     To the extent a final adjudication by this Court evidences that Allied Holdings, Allied Bank, Bertrand and Maloney were not entitled to withhold the funds in the Operating Account from the Underlying Plaintiffs, the D&O Coverage Part excludes coverage based on the Fraud/Illegal Profit and Violation of Law exclusion.

75.     The Complaint and Amended Complaint allege that Allied Holdings (Complaint), Allied Bank (Amended Complaint), Bertrand and Maloney acted knowingly, willfully and wantonly in taking the Underlying Plaintiffs' funds and then refusing to turn over access to the Operating Account.

76.     To the extent a final adjudication by this Court evidences that Allied Holdings, Allied Bank, Bertrand and Maloney committed fraud with actual knowledge of its wrongful nature or with intent to cause damage to the Underlying Plaintiffs, the D&O Coverage Part excludes coverage based on the Fraud/Illegal Profit and Violation of Law exclusion.

77.     To the extent the Complaint and Amended Complaint seek punitive damages, such damages do not constitute Loss under the Policy or D&O Coverage Part.

**Count II – Declaratory Judgment**
**(No Duty to Defend or Indemnify Allied Holdings, Allied Bank,**
**Bertrand and Maloney under the EPL Coverage Part)**

78.     Wesco re-alleges and incorporates each of the allegations of paragraphs 1 through 63 as if fully set forth herein.

79.     To the extent the Complaint and Amended Complaint do not allege Loss within the terms of the EPL Coverage Part's Insuring Agreement, no coverage applies.

80.     To the extent the Complaint and Amended Complaint seek compliance with any non-monetary or injunctive relief of any kind or any agreement to provide such relief, the definition of Loss is not met and the EPL Coverage Part provides no coverage.

81.     To the extent the Complaint and Amended Complaint seek compensation earned by an Employee while employed by the Company but not paid by the Company for reasons other than Wrongful Acts, or damage determined to be owed under an express written contract of employment or an express written obligation to make payments in the event of termination of employment, the definition of Loss is not met and the EPL Coverage Part provides no coverage.

82.     To the extent the Complaint and Amended Complaint allege Loss for severance pay, damages or penalties under an express written Employment Agreement, or under any policy or procedure providing for payment in the event of separation from employment; or sums sought solely on the basis of a claim for unpaid services, the EPL Coverage Part excludes coverage based on the Severance Pay/Damages exclusion.

83.     To the extent the Complaint and Amended Complaint seek punitive damages, such damages do not constitute Loss under the Policy or EPL Coverage Part.

### Count III – Declaratory Judgment
**(No Duty to Defend or Indemnify Allied Holdings, Allied Bank,
Bertrand and Maloney under the Fiduciary Coverage Part)**

84.     Wesco re-alleges and incorporates each of the allegations of paragraphs 1 through 63 as if fully set forth herein.

85.     To the extent the Complaint and Amended Complaint allege no Wrongful Act, as defined by the Fiduciary Coverage Part, the terms of the Fiduciary Coverage Part are not met and no coverage applies.

86.     The Complaint and Amended Complaint allege that Allied Holdings (Complaint), Allied Bank (Amended Complaint), Bertrand and Maloney are not legally entitled to withhold the funds in the Operating Account.

87.     To the extent the Complaint and Amended Complaint do not seek Loss within the terms of the Fiduciary Coverage Part, no coverage applies.

88.     To the extent a final adjudication by this Court evidences that Allied Holdings, Allied Bank, Bertrand and Maloney were not entitled to withhold the funds in the Operating Account from the Underlying Plaintiffs, the Fiduciary Coverage Part excludes coverage based on the Fraud/Illegal Profit and Violation of Law exclusion.

89.     The Complaint and Amended Complaint allege that Allied Holdings, Allied Bank, Bertrand and Maloney acted knowingly, willfully and wantonly in taking the Underlying Plaintiffs' funds and then refusing to turn over access to the Operating Account.

90.     To the extent a final adjudication by this Court evidences that Allied Holdings (Complaint), Allied Bank (Amended Complaint), Bertrand and Maloney committed fraud with actual knowledge of its wrongful nature or with intent to cause damage to the Underlying Plaintiffs, the Fiduciary Coverage Part excludes coverage based on the Fraud/Illegal Profit and Violation of Law exclusion.

91.     To the extent the Complaint and Amended Complaint allege Loss for the return or reversion to an Employee of any contribution or asset of any Employee Benefits, the Fiduciary Coverage Part excludes coverage based on the Failure to Collect Contribution/Benefits.

92.     To the extent the Complaint and Amended Complaint seek punitive damages, such damages do not constitute Loss under the Policy or Fiduciary Coverage Part.

**Count IV – Declaratory Judgment**
**(No Duty to Defend or Indemnify Allied Holdings, Allied Bank,**
**Bertrand and Maloney under the Network Security and Privacy Coverage Part)**

93.     Wesco re-alleges and incorporates each of the allegations of paragraphs 1 through 63 as if fully set forth herein.

94.     To the extent the Complaint and Amended Complaint do not allege a Wrongful Privacy Act, the terms of the Network Security and Privacy Coverage Part's Insuring Agreement are not met and no coverage applies.

95.     To the extent the Complaint and Amended Complaint do not allege Loss within the Network Security and Privacy Coverage Part, no coverage applies.

96.     The Complaint and Amended Complaint allege that Bertrand and Maloney were Executives of Allied Holdings (Complaint) and Allied Bank (Amended Complaint).

97.     The Amended Complaint alleges that Underlying Plaintiffs were Employees of Allied Bank.

98.     To the extent the Complaint and Amended Complaint allege Loss in connection with any Claim made against any Insured by any Insured, the Network Security and Privacy Coverage Part excludes coverage based on the Insured vs. Insured exclusion.

99.     The Complaint and Amended Complaint allege that Bertrand has violated banking regulations by providing detailed information about the Operating Account to MBO employees and seeks to unfairly compete with the Underlying Plaintiffs.

100.     To the extent a final adjudication by this Court evidences that that Allied Holdings, Allied Bank, Bertrand and Maloney used this information to gain a pecuniary advantage over the Underlying Plaintiffs, the Network Security and Privacy Coverage Part excludes coverage based on the Fraud/Illegal Profit and Violation of Law exclusion.

101.     The Amended Complaint alleges that Bertrand knows that by withholding approximately $1,200,000 in the Operating Account from the Underlying Plaintiffs, their ability to forge new business relationships and to grow their business will be impaired.

102.     To the extent a final adjudication by this Court evidences that Allied Holdings, Allied Bank, Bertrand and Maloney committed fraud with actual knowledge of its wrongful nature or with intent to cause damage to the Underlying Plaintiffs, the Network Security and Privacy Coverage Part excludes coverage based on the Fraud/Illegal Profit and Violation of Law exclusion.

103.     To the extent the Complaint and Amended Complaint seek punitive damages, such damages do not constitute Loss under the Policy or Privacy Coverage Part.

WHEREFORE, Wesco Insurance Company respectfully requests that this Court enter judgment in its favor and against all defendants:

1)     Declaring that Wesco owes no duty to defend Allied First Bancorp, Inc., Allied First Bank, sb, Kenneth L. Bertrand and James Maloney in connection with the Underlying Lawsuit under Policy No. WDO1439606 01;

2)    Declaring that Wesco owes no duty to indemnify Allied First Bancorp, Inc., Allied First Bank, sb, Kenneth L. Bertrand and James Maloney in connection with the Underlying Lawsuit under Policy No. WDO1439606 01; and

3)    Awarding such other and further relief as the Court finds just and proper.

WESCO INSURANCE COMPANY,


By:  ___/s/ Philip R. King_____
          One of its Attorneys


Philip R. King
COZEN O'CONNOR
123 N. Wacker Drive, Suite 1800
Chicago, IL 60606
pking@cozen.com
312-382-3100
312-382-8910 Fax